Montgomery v. McGuire.

## Lewis E. Montgomery
### v.
## Edward McGuire and Samuel T. Brush.

*Trover—Conversion of Cattle—Right of Possession—Contracts—Evidence—Conflict of—Statements by Third Persons—Admissibility of.*

In an action of trover for the conversion of 127 head of cattle which were placed in the defendant's pasture by certain third persons, in whose possession the cattle were and who had a special contract with the defendant for the use of his pasture, it is *held:* That the verdict of the jury, finding that there was no change in the ownership or possession of the cattle, is conclusive, the evidence being conflicting; that statements in reference to the matter made by said third persons, unless made at the time and as a part of

the transaction, were properly excluded; that the insolvency of such third persons was such a "disability" within the meaning of the contract between them and the plaintiffs as entitled the latter to the possession of the cattle and gave them the right to bring this suit.

[Opinion filed February 17, 1887.]

APPEAL from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. CONNOLLY & MATHER and C. C. & STUART BROWN, for appellant.

We submit that as to Montgomery, who was without notice, the contract between McGuire & Brush of the one part and Milligan & McIlvane of the other part, made Milligan & McIlvane the owners of the cattle, and Montgomery had the right to treat them as the cattle of Milligan & McIlvane. Koch v. Willi, 63 Ill. 144.

As to Montgomery, this contract was a sale of the cattle from McGuire & Brush to Milligan & McIlvane.

When the identical thing delivered is to be returned it is a bailment, and the title to the property is not changed, but when there is no obligation *to restore the specific thing, but only its value,* it is a sale. Lonergan v. Stewart, 55 Ill. 44, 49.

When the owner voluntarily parts with his goods, and clothes the purchaser with the *indicia* of ownership, title passes to a third party who has no knowledge of any condition attached to the former sale, or any fraud, if there be a fraud. Jennings v. Gage, 13 Ill. 610; Brundage v. Camp, 21 Ill. 330.

If owner has been deceived and defrauded into parting with his property, he can not reclaim it from one who afterward buys it in good faith. Parsons on Contracts, Vol. 1, p. 520.

Appellees had, as against the appellant, neither a right of property, nor a right of possession in these cattle, at the time of the commencement of this suit in the spring of 1886.

Both right of property and right of possession, as against the defendant, are necessary to maintain trover. Forth v. Pursley, 82 Ill. 152; Eisendrath v. Knauer, 64 Ill. 396; Bertholf v. Quinlan, 68 Ill. 297; Owens v Weedman, 82 Ill. 409.

Mr. WILLIAM J. ALLEN, for appellees.

CONGER, J. This was an action in trover brought by appellees against appellant in the Circuit Court of Sangamon County, for conversion of 127 head of cattle.

On the 16th day of June, 1885, appellees McGuire & Brush entered into the following agreement with the firm of Milligan & McIlvane:

### AGREEMENT.

" This agreement made and entered into this sixteenth day of June, A. D. 1885, between Edward McGuire and Samuel Brush, of Carbondale, Illinois, party of the first part, and Milligan & McIlvane, a firm composed of W. M. H. Milligan, of Perry County, Illinois, and T. D. McIlvane, of Christian County, Illinois, party of the second part, witnesseth: That the said party of the first part have, on the date of this agreement, appointed the said firm of Milligan & McIlvane their agents, to sell a certain lot of cattle, and have this day consigned to the said firm at Moawequa, in Christian County, Illinois, to be transported by the Illinois Central Railroad Company, the said lot of cattle, consisting of two hundred and eighteen (218) head, principally one and two years old, to be sold by the said Milligan & McIlvane, as the agents of the said McGuire & Brush, under the following limitations. In consideration of the present value of said cattle, and the probable increase, by reason of growth and improved condition, and for other valuable considerations, the said Milligan & McIlvane are to assume all expense and charge of transportation, feed, pasturage and care of said cattle, from and after the date of this agreement, and hereby agree to sell or otherwise dispose of said cattle on or before the first day of November, 1885, and hereby guarantee and agree, and by these presents bind themselves, their heirs, administrators, executors and assigns, to pay unto the said Edward McGuire and Samuel Brush, or their order, their heirs, administrators, executors or assigns, on or before the first day of November, 1885, the sum of thirty-four hundred and forty-four dollars ($3,444) with interest at the rate of eight per cent. per annum

from the date hereof until the same be paid ; it being under-
stood and agreed that any amount in excess of the above
named sum, with interest at eight per cent. per annum from
this date until the same be paid, arising from the sale of said
cattle, shall be paid to and held by said Milligan & McIlvane,
as their compensation as agents, for freight charges, feed and
pasturage, and all other expenses incurred on account of same
until sold.

" It is further understood and agreed by said Milligan &
McIlvane, that whenever any number or part of said cattle
are sold by them, the proceeds of such sale, after deducting
*pro rata* expenses and charges, are to be paid to the said Mc-
Guire & Brush, such payment to be entered on this contract
as a credit, and when the sum of such payments shall amount
to the aforesaid sum of thirty-four hundred and forty-four
dollars ($3,444) and accrued interest, then this agreement shall
be canceled, and the cattle remaining unsold, if any, shall
become the property of Milligan & McIlvane.

"It is understood and agreed that the said Milligan &
McIlvane are, and shall act as agents of the said McGuire &
Brush for the sale of the aforesaid cattle, and in case of the
death or inability to act of either member of said firm of Mil-
ligan & McIlvane, then the surviving partner shall carry out
and execute the terms of this agreement; and further, if both
members of said firm shall die or be prevented by disability
from carrying on their business before compliance with this
contract, then the said McGuire & Brush, or their assigns,
shall have the right to take possession of any or all of said
cattle remaining unsold and accounted for at such time, and
to sell the same to the best advantage and apply the pro-
ceeds to the payment of the balance that may be due upon the
contract, paying over the residue, if any, to the heirs or assigns,
or legal representatives of the said firm of Milligan & McIl-
vane.

"In witness whereof the said parties have hereunto set their
hands and seals the day and year first above written.

" EDWARD McGUIRE,   [SEAL]

" SAMUEL T. BRUSH,   [SEAL]

" MILLIGAN & McILVANE   [SEAL]

"It is hereby mutually agreed that the within agreement, contract and agency, in all its parts, provisions and conditions shall be, and it is hereby renewed, prolonged and extended to and until the first day of September, A. D. 1886.

"In witness whereof we, the parties to the within agreement, have hereunto fixed our hands and seals this 9th day of November, A. D. 1885.

"Edward McGuire,   [seal]

"Samuel T. Brush,   [seal]

"Milligan & McIlvane. [seal]"

Under this contract the cattle mentioned therein were shipped to Moawequa and by Milligan & McIlvane placed in pasture on the farm known as the "Tanner Farm," on which McIlvane was living.

About the 1st of April, 1885, the following contract was entered into between appellant Montgomery and Milligan & McIlvane:

"Memorandum of agreement between L. E. Montgomery, of Springfield, Illinois, of the first part, and W. H. Milligan, of Pinkneyville, Ill., and D. T. McIlvane, of Willeys, Ill., known and doing business under the firm name of Milligan & McIlvane, party of the second part, witnesseth:  That the said Montgomery agrees to furnish the following described tract of pasture land, to wit:  The N. E. $\frac{1}{4}$ of Sec. 23;  S. E. $\frac{1}{4}$ of Sec. 28;  S. $\frac{1}{2}$ N. E. $\frac{1}{4}$ of Sec. 28; W. $\frac{1}{2}$ N. W. $\frac{1}{4}$ of Sec. 27; W. $\frac{1}{2}$ S. W. $\frac{1}{4}$ of Sec. 27, Tp. 15 N., R. 2, W. of 3rd P. M., Christian County, Ill., and containing 440 acres, more or less, at the sum of twelve hundred dollars, and he is also to furnish five thousand dollars ($5,000) in money, one-half by April 1, 1885, and one-half by May 1, 1885, to be used as follows: The said Milligan & McIlvane are to purchase five thousand dollars ($5,000) worth of young, growing, healthy cattle, to stock said pasture for Montgomery to consume the season's grass on the same, and to act as selling agents for Montgomery.  Said cattle are to be marketed at the close of the grazing season, not later than December 1, 1885, to the best advantage.  And it is further agreed that said second parties are to receive and accept for their services in attending to said

business for Montgomery, the profit that shall accrue from said deal, after Montgomery shall be paid the sum of twelve hundred dollars for said pasture on or before December 1, 1885, with 8 per cent. interest, after that date, till paid; the sum of $5,000 furnished to purchase said cattle, with 8 per cent. interest thereon, for the time the same is used by said parties and in said stock. And the sum of seven hundred and fifty dollars and ten cents, with 8 per cent. interest thereon from March 1, 1885, being a balance due said Montgomery on a previous deal, provided the said stock bring so much. It is distinctly agreed between said parties, that the stock so furnished shall be the sole and absolute property of said Montgomery, and the said stock on said pasture shall be in his possession and in his control, said second parties having put no money in the same, all the purchase money having been furnished by said Montgomery. And it is distinctly agreed, that if said cattle put upon said pasture do not bring the sum of five thousand dollars with 8 per cent. per annum, from the time said money is invested till said cattle is sold, or until December 1, 1885; also, the sum of twelve hundred dollars for said pasture to be paid December 1, 1885, that then the said parties of the second part are to be liable personally for such deficit to said Montgomery, as the cattle are to be purchased and selected by them, and the said Montgomery does not agree to be bound by the valuation placed by them upon said cattle; and all surplus, after making the payments herein above set forth, is to be the property of said second parties. All sales are to be made by and with the consent of said Montgomery, and the money to be first used in discharging the amount coming to him.

"L. E. MONTGOMERY.
"MILLIGAN & McILVANE."

Under this contract Milligan & McIlvane, in May, 1885, placed 157 head of cattle upon the farm of appellant. On the 7th of October, 1885, Milligan & McIlvane wanted to take 125 head of these cattle out of the pasture and stall-feed them, and the following additional contract was written upon the one made in April, viz.:

Montgomery v. McGuire.

"Springfield, Ill., Oct. 7, 1885.

"It is this day mutually agreed between the parties to this contract, that Milligan & McIlvane are to remove one hundred and twenty-five (125) head of cattle to their former farm, situated in May Township, in Christian County, Illinois, where they are to feed them corn in the best manner, to cause them to fatten, for sixty (60) days, the feeding to be done under Montgomery's direction, and this move is in no way to interfere with Montgomery's ownership and control of the cattle, as per tenor of this contract, of which this agreement becomes part.

"L. E. Montgomery,<br>"Milligan & McIlvane."

The 125 head were accordingly removed.

About the 10th of November, 1885, Milligan & McIlvane transferred 131 head of the cattle received under the Brush & McGuire contract from the Tanner farm to the Montgomery pasture, and it is the character of this transfer which forms the issue in dispute; appellant Montgomery insisting that the 131 head of cattle were thus placed in his pasture by Milligan & McIlvane under their contract with him, and that thereby the title to them at once vested in him; while the latter, as well as appellees, contend that these cattle were removed from the Tanner farm to the Montgomery farm only for the purpose of utilizing the grass on the latter place, and with no intention whatever of making any change in the ownership or possession of the cattle.

We have examined the evidence upon this point carefully, and find it, as usual in such cases, conflicting, but we are not prepared to say that the finding of the jury, that there was no sale or transfer of title, is unwarranted.

Much would depend upon the weight given the various witnesses as to where the preponderance upon this question rests, and the jury having the advantage of seeing and hearing the witnesses, and observing their demeanor upon the stand, their verdict, when properly instructed as to the law of the case, must be regarded as settling the controverted facts.

Appellant, under this claim, some time in January, after the

insolvency of Milligan & McIlvane, replevied from their possession 127 head of these cattle, sold them, and refusing, upon demand made upon him by appellees, to account for their value, this suit was instituted.

While appellant was upon the stand as a witness, he was asked the following question: "Have you heard either of them (Milligan or McIlvane) say how they came to put the 131 head in there—what they put them in under? If you heard either of them say, state." An objection was made, which was sustained by the court, and this ruling of the court is assigned for error.

Milligan & McIlvane not being parties to the record, their statements in reference to the matter inquired about would not be proper unless made at the time, and as a part of the transaction, so as to make them a part of the *res gestæ*.

The question was not so limited as to make it apply to the time of the transaction, and was therefore improper.

Appellant also contends that, at the time of the commencement of this suit, appellee had, as against appellant, neither a right of property nor a right of possession as to the cattle.

The jury having found that there was no sale to appellant, he had no interest in the property, and the character of the contract of June 16th need not be considered in its relations to third parties.

The firm of Milligan & McIlvane became insolvent on the 4th of January, 1886, and thereby, as we think, were "prevented by disability from carrying on this business," which event would, according to the contract, authorize appellees to take immediate possession of the cattle and dispose of them in accordance with its terms, which we think fully answers the objection as to their right to bring the suit.

The action of the Circuit Court in refusing appellant's refused instructions Nos. 1 and 2, was proper. The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*